# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RURAL WATER, SEWER, AND SOLID )
WASTE MANAGEMENT DISTRICT )
NO. 1, LOGAN COUNTY, )
OKLAHOMA, AN AGENCY AND )
LEGALLY CONSTITUTED )
AUTHORITY OF THE STATE OF )
OKLAHOMA, )
                       Plaintiff, )
 )
vs. ) Case No. CIV-05-786-M
 )
CITY OF GUTHRIE, AN OKLAHOMA )
MUNICIPALITY, AND THE GUTHRIE )
PUBLIC WORKS AUTHORITY, A )
PUBLIC TRUST, )
 )
                       Defendants. )

## ORDER

I.    Introduction

Plaintiff Rural Water, Sewer, and Solid Waste Management District No. 1, Logan County, Oklahoma ("Logan-1") brought this action against defendants City of Guthrie and the Guthrie Public Works Authority (collectively "Guthrie") for the purpose of enforcing its rights under 7 U.S.C. § 1926(b), as well as under 42 U.S.C. § 1983. A jury trial was conducted to determine if Logan-1 is entitled to the protections provided by § 1926(b) as against Guthrie as to certain disputed customers. On November 14, 2014, a jury entered its verdict finding in favor of Logan-1 as to the following disputed customers: the Mission Hills development, the Pleasant Hills development, and disputed customer nos. 1, 3, 5, 6, 8, 9, 11, 12, 18, 20, 21, 24, 26, 27, 29, 30, 32, 36, 39, 48, 50, 53-58, 60-69, 71, 73, 75, 77, 79, 80, 82-88, 90, 92-94, 98, 100, 101, 103-117, 119, 123, 125, 127, 136, 140, 142, 145, 146, 148-154, 158, 160-162, 164, 167, 169, 170, 174-179, 181, 182, 184, 186, 188-190, 193,

196, 197, 205, 206, 209, 210, 212, 214, 215, 218, 222, 228, 230-237, 239-244, 246, 250-254, 256, 258-262, 276, 280-285, 292-294, 296-299, 302, 303, 321, 322, 327, 329, 330-332, 334-336, 345, 349, 351-354, 356-360, 363-365, 384, and 388 (hereinafter "Disputed Customers"). The jury further determined Logan-1's damages to be $1,274,437.00. On January 8, 2015, the Court conducted an evidentiary hearing to determine the appropriate equitable relief, if any, which should be granted to Logan-1 in relation to the Disputed Customers. Based upon the evidence and testimony presented at the evidentiary hearing and at the jury trial, and having carefully reviewed the parties' submissions, the Court makes its determination as to the appropriate equitable relief which should be granted to Logan-1.

II.     Discussion

Logan-1 seeks a permanent injunction enjoining and restraining Guthrie from existing and further violations of § 1926(b) in relation to the Disputed Customers and a constructive trust to the on-site water lines and facilities associated within the Mission Hills Addition.

   A.     Permanent Injunction

   A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Crandall v. City and Cty. of Denver, Colo.*, 594 F.3d 1231, 1235-36 (10th Cir. 2010) (internal quotations and citation omitted). Additionally, "Section 1926(b) does not create or specify a remedy for the enforcement of violations, but an injunction has been the principal tool employed by the courts with which to enforce the statute and prevent violations." *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 917 (5th Cir. 1996).

2

As set forth above, the jury in this case returned a verdict for Logan-1 and against Guthrie as to the Disputed Customers. As to each Disputed Customer, the jury specifically found that Logan-1 made potable water service available to the disputed customer and that Guthrie limited or curtailed Logan-1's water service to the disputed customer. Based upon the jury's verdict and specific findings, the Court finds that Logan-1 has shown actual success on the merits.

Regarding irreparable harm, Logan-1 asserts that if Guthrie continues to provide water service to the Disputed Customers, Logan-1 will continue to suffer an economic loss each month and multiple suits would have to be filed to enable Logan-1 to recover its ongoing damages, which would fluctuate based upon the number of customers and the volume of water purchased by those customers, and that those future damages are not reasonably capable of precise calculation based upon the events which may or may not occur in the future. Guthrie contends that Logan-1 has not shown that it will suffer irreparable harm because it has not proven that the money damages awarded by the jury are inadequate.

Having heard the evidence and testimony presented, the Court finds that if Guthrie is not enjoined from providing water service to the Disputed Customers, there is a significant risk of harm to Logan-1 that cannot be cured by monetary damages. For the period of time during which Logan-1 remains indebted to the United States government and entitled to claim a protected service area under § 1926(b), a period of time which is expected to last a significant number of years into the future, a new violation of § 1926(b) would occur each time Guthrie provides water service to a Disputed Customer. This would result in the filing of multiple suits by Logan-1 to recover its ongoing damages, which would fluctuate based upon the number of customers and the volume of

3

water purchased.[1]  As numerous courts have found, a permanent injunction appears to be the best tool to employ to enforce § 1926(b) and prevent future violations of § 1926(b).

Additionally, as the jury has determined that Guthrie has violated Logan-1's rights under § 1926(b) in relation to almost two hundred Disputed Customers, the Court finds any harm Guthrie might suffer as a result of being enjoined from continuing to violate Logan-1's rights under § 1926(b) is clearly outweighed by the harm suffered by Logan-1 if Guthrie is allowed to continue violating its rights.  Finally, the Court finds that a permanent injunction will not adversely affect the public interest.  In fact, "the purposes of 7 U.S.C. § 1926(b) are to encourage rural water development and to safeguard the interest of the United States in having its loans repaid – both purposes aimed at promoting the public interest."  *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 346 F.3d 1260, 1276-77 (10th Cir. 2003) (internal quotations and citation omitted). Clearly, an injunction precluding the violation of Logan-1's rights under § 1926(b) would be in the public interest.

Accordingly, the Court finds that an injunction preventing Guthrie from any continued or new violations of Logan-1's rights under § 1926(b) as to the Disputed Customers is appropriate. Specifically, the Court finds that Guthrie should be enjoined and restrained as follows:

1.  Guthrie shall be enjoined and restrained from limiting or curtailing the potable water service provided or made available by Logan-1 to the Disputed Customers.  Guthrie shall be further enjoined from engaging in acts of competition with Logan-1 for potable water service provided or made available by Logan-1 to the Disputed Customers and from engaging in any act which would

---

[1] The Court would note that filing multiple suits, in itself, has both economic and non-economic costs and consequences associated with it.

serve to dissuade or frustrate an existing potable water customer of Logan-1 from continuing to receive potable water service from Logan-1 or dissuade or frustrate a Disputed Customer from requesting or obtaining potable water service from Logan-1. Guthrie shall be enjoined and restrained from furnishing, providing or selling potable water for use/consumption to the Disputed Customers. Guthrie shall be further restrained from taking any actions which would hinder Logan-1's ability to connect the Disputed Customers to Logan-1's water system.

2. The injunctive relief provided against Guthrie shall also apply to its officers, agents, servants, employees, attorneys, including but not limited to, Guthrie's city council, mayor and manager, and anyone who is in active concert or participation with Guthrie. Guthrie shall provide notice of the injunction to all persons holding positions as identified in this paragraph, and any and all replacements or additions of persons falling into the categories of persons identified above.

3. This injunction shall be conditioned upon Logan-1 remaining indebted to the United States Department of Agriculture ("USDA") or on a loan guaranteed by he USDA.

B. Constructive Trust

"A constructive trust is an equitable remedy that is imposed for the recovery of wrongfully-held property." *In re Seneca Oil Co.*, 906 F.2d 1445, 1450 (10th Cir. 1990) (internal citations omitted).

> The Supreme Court of Oklahoma has explained the conditions for imposing a constructive trust as follows:
>> The primary reason for imposing a constructive trust is to avoid unjust enrichment. It is imposed against one who "by fraud, actual or constructive, by [duress] or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either [has] obtained or holds the legal right to property which he

5

> ought not, in equity and good conscience, hold and enjoy."
>
> *Easterling v. Ferris*, 651 P.2d 677, 680 (Okla. 1982) (quoting *Cacy v. Cacy*, 619 P.2d at 202) (bracketed words added). Mere "unfairness" in allowing the holder of the property to retain the property is *not* sufficient to justify imposition of a constructive trust. *Easterling*, 651 P.2d at 680. There must also be "active wrongdoing" by the person holding the property. *Id.* The evidence of wrongdoing "must be clear, unequivocal, and decisive beyond a reasonable doubt. . . . A mere preponderance of the evidence is not sufficient to establish a constructive trust but it must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to leave but one conclusion, or as to leave no reasonable doubt as to the existence of the trust." *Id.* at 691; *see also Ohio v. Four Seasons Nursing Centers of America, Inc.*, 465 F.2d 25, 28 (10th Cir. 1972) (observing that the standard for imposing a constructive trust in Oklahoma is rigorous).

*In re Seneca Oil Co.*, 906 F.2d at 1450 (emphasis in original).

Having heard the evidence and testimony presented during the jury trial and the evidentiary hearing, the Court finds that Logan-1 has not met its rigorous burden to support the imposition of a constructive trust. Specifically, the Court finds that Logan-1 has not shown by clear, definite, unequivocal and satisfactory evidence that Guthrie engaged in active wrongdoing. While the evidence is clear that Guthrie was aware that Logan-1 claimed it had the exclusive right to serve Mission Hills and Pleasant Hills, the evidence is not clear and unequivocal that Guthrie agreed that Logan-1 had the exclusive right. Based upon the evidence, it appears that Guthrie disputed Logan-1's claimed right, reasonably believed that Logan-1's claimed right was barred by the Oklahoma Constitution, and reasonably believed that Logan-1 had not made service available to Mission Hills and Pleasant Hills.

Accordingly, the Court finds that no constructive trust to the on-site water lines and facilities associated within the Mission Hills Addition should be imposed in this case. The Court recognizes

that its decision leaves the parties in an unusual situation. Logan-1 has the exclusive right, as long as § 1926(b) is applicable, to provide water service to the Mission Hills Addition, but it does not own the water lines currently in place. Guthrie, on the other hand, owns the water lines in place adequate to serve the Mission Hills Addition, but it does not have the legal right to provide water. Surely there is incentive for these public bodies to work out a solution that would not require Logan-1 to build duplicate lines. This Court's finding is only that Guthrie's acts were not sufficiently wrongful to meet the strict legal standard that would require it to transfer ownership of the existing water lines to Logan-1.

C. Transfer of Service

In light of the Court's finding that a permanent injunction should be entered, the transfer of water service to the Disputed Customers from Guthrie to Logan-1 will be necessary. The Court finds that some guidelines regarding this transfer should be imposed. Guthrie requests the Court impose a deadline by which Logan-1 must physically make service available; Logan-1 asserts that no deadline should be imposed. Having carefully reviewed the parties' submissions, the Court finds that a deadline of two years from the date of the final resolution of this case, i.e., the final resolution of all appeals, for Logan-1 to physically make service available should be imposed.

The Court, thus, sets forth the following guidelines regarding the transfer of water service to the Disputed Customers from Guthrie to Logan-1:

1. Guthrie shall retain ownership and control over the on-site facilities, and shall continue to provide potable water service to the Disputed Customers, until two years from the date of the final resolution of this case or until such time as Logan-1 is ready to connect the Disputed

7

Customers to its own facilities, whichever is earlier. Guthrie shall retain the revenue it generates and shall be responsible for maintenance and repairs of the facilities during this transition period.

2. At the time Logan-1 is ready to make the connection of the on-site facilities serving a Disputed Customer to its own facilities, Guthrie shall cease the delivery of potable water to the customers within that property.

3. Guthrie shall cooperate and work with Logan-1 in good faith to accomplish the transfer of the Disputed Customers to Logan-1's potable water system as expeditiously as possible.

III. Conclusion

Accordingly, for the reasons set forth above, the Court finds that a permanent injunction preventing Guthrie from any continued or new violations of Logan-1's rights under § 1926(b) as to the Disputed Customers should be entered but that a constructive trust to the on-site water lines and facilities associated within the Mission Hills Addition should not be imposed in this case.

**IT IS SO ORDERED this 11th day of January, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE